# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DARYL DOUGLAS JUSTICE,

                      Petitioner,                      Case Number: 2:09-cv-13264

v.                                      HONORABLE MARIANNE O. BATTANI

BLAINE LAFLER,

                      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Daryl Douglas Justice filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state prisoner in the custody of the Michigan Department of Corrections pursuant to convictions for first-degree criminal sexual conduct and second-degree criminal sexual conduct. He raises ten grounds for habeas relief. Respondent argues that the claims are meritless and/or procedurally defaulted.

The Court denies the petition.

## I.     Facts

Petitioner's convictions arise from the sexual assaults of 11-year-old Jessica M.[1] and 6-year-old Kayla K., on June 29, 2002. Jessica M. testified that Petitioner was her father's boss. He invited her parents to go to his home in northern Michigan with him.

_____

[1] To protect the privacy of the minor victims, they and their family members will be referred to by first name and first initial of their last names.

Her parents, Eve and Eric, agreed to go.  Jessica, her parents, and three siblings drove up to Petitioner's home in Kings Township on June 29, 2002.  They drove to Petitioner's home with Jessica's aunt and uncle, Stacey and Frank K, and their children, Jacob, Kayla, and Eric.  Originally, she was placed in a bedroom where all of the children were sleeping.  At some point, Petitioner changed the sleeping arrangements because the children were too noisy.  He placed Jessica in his room, on the floor by his bed.  Jessica testified that at some point during the night she woke up because something was hurting her in her "privates."  Petitioner had put his hand in her pants and was moving his fingers back and forth inside her.  After he stopped, she left his room.  She eventually told her cousin Jacob what happened.  Jacob told Jessica's parents what happened.  Both families left the home and called police from a pay phone.  Jessica and Kayla were taken to a hospital.

Jacob K. testified that his mother and step-father were employed by Petitioner at Eagle Plumbing.  He, his parents, and his two sisters, Emily and Kayla were invited to Petitioner's home up north in June 2002.  The first night there, Jacob was sleeping beside his sister Kayla.  He woke to find Petitioner with his hand down Kayla's pants.  When Jacob asked whether that was Petitioner beside Kayla, Petitioner ran back to his own room.  Jacob testified that he was later awakened by Jessica, who told him that Petitioner had raped her.  Despite Jessica's protests, Jacob told Jessica's parents, who then told his own parents.  Both families then left the home.

Petitioner testified in his own defense.  He denied inappropriately touching Jessica

2

or Kayla.  He testified that at one point during the evening of June 29, 2002, he entered the room where the children were sleeping and saw Jacob with his hand down Jessica's pants.  He moved Jessica into the top bunk.  He was later awakened by noise from the room where the children were sleeping.  He testified that when he entered the children's room he saw Jessica seated beside Jacob.  He moved Jessica into the hallway.  Petitioner woke a third time to find Jessica beside his bed.  Her leg was banging against his arm, which was dangling off the edge of the bed.  He sent Jessica downstairs to sleep on the courch.  After sending Jessica downstairs, Petitioner went into the children's bedroom. He saw a hand sticking out from one of the beds.  Petitioner grabbed the hand.  Jacob then said, "You're scaring me."  Petitioner reassured Jacob it was only him and tucked the covers around Jacob and Kayla.

## II.   Procedural History

Petitioner was convicted by a jury in Alcona County Circuit Court of one count each of first- and second-degree criminal sexual conduct.  He was sentenced to twenty to forty years in prison for the first-degree conviction and eight to fifteen years in prison for the second-degree conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims: (i) other act evidence improperly admitted; (ii) right to present a defense denied; (iii) ineffective assistance of trial counsel; and (iv) trial court improperly found substantial and compelling reasons for departing from sentencing guidelines.  The Michigan Court of Appeals affirmed the convictions, but remanded for resentencing

3

because the trial court failed to articulate a substantial and compelling reason for departing from the sentencing guidelines. *People v. Justice*, No. 249429, 2004 WL 2387660 (Mich. Ct. App. Oct. 26, 2004). Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals, except that he did not raise the sentencing-related claim. The Michigan Supreme Court denied leave to appeal. *People v. Justice*, 472 Mich. 940 (2005).

On remand, Petitioner was resentenced to 18 years, 9 months to 40 years in prison for the first-degree criminal sexual conduct conviction and 8 to 15 years in prison for the second-degree criminal sexual conduct conviction.

Petitioner appealed his resentencing to the Michigan Court of Appeals, arguing that they violated *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Michigan Court of Appeals affirmed the sentences. *People v. Justice*, No. 260141, 2006 WL 1008994 (Mich. Ct. App. Apr. 18, 2006). The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Justice*, 476 Mich. 868 (Aug. 29, 2006).

Petitioner filed a motion for relief from judgment in the trial court. He raised these claims: (i) fair trial denied by trial court's refusal to permit defense witnesses to testify; (ii) prosecutor improperly vouched for complainant's credibility; (iii) insufficient evidence; (iv) extrinsic evidence influenced jury; (v) ineffective assistance of trial counsel; and (vi) ineffective assistance of appellate counsel. The trial court denied the motion. The Michigan Court of Appeals denied leave to appeal. *People v. Justice*, No.

4

287709 (Mich. Ct. App. Jan. 5, 2009).  The Michigan Supreme Court also denied leave to

appeal. *People v. Justice*, 484 Mich. 867 (Mich. Aug. 6, 2009).

Petitioner then filed the pending habeas corpus petition.  He raises these claims:

I.      Petitioner was denied his due process right to a fair trial where he was on trial for criminal sexual conduct and the prosecutor elicited other acts evidence.

II.     Petitioner was deprived of the right to present a defense when the trial court precluded him from presenting evidence of bias and motive for fabrication.

III.    Petitioner was denied the effective assistance of counsel at trial.

IV.     Petitioner is entitled to resentencing because the statutory sentencing guidelines were scored as to offense variables 4, 8, 10, and 13 in violation of the Sixth and Fourteenth Amendments.

V.      Petitioner was denied a fair trial by the trial court's refusal to permit a defense witness from testifying at trial.

VI.     The prosecutor improperly vouched for the credibility of the complaining witness, denying defendant the right to a fair trial.

VII.    The evidence was insufficient to support a guilty verdict of second-degree criminal sexual conduct.

VIII.   Petitioner was denied a fair trial as a result of extrinsic influences upon the jury.

IX.     Petitioner was denied a fair trial by ineffective assistance of counsel on presenting a defense.

X.      Petitioner was denied due process by ineffective assistance of counsel on appeal.

**III.   Standard of Review**

28 U.S.C. § 2254(d) provides:

5

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations

6

omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing*

*Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.   Discussion

### A.   Procedural Default

Respondent argues that Petitioner's fifth through tenth claims are procedurally defaulted. Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Petitioner's claim of ineffective assistance of trial counsel was raised for the first time on collateral review in state court. The Michigan Supreme Court denied relief

8

pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The United States Court of Appeals for the Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

The trial court rejected Petitioner's claims pursuant to Michigan Court Rule 6.504(B)(2), which states that a court must deny a motion for relief from judgment without further proceedings if it plainly appears from the face of the motion that the movant is not entitled to relief. The trial court did not cite Rule 6.508 or any other procedural bar when it denied the motion for relief from judgment. This Court therefore presumes that the trial court adjudicated these claims on the merits. *See Harrington v. Richter*, ––– U.S. –––, –––, 131 S.Ct. 770, 784–85 (2011) (stating that, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of

9

any indication or state law procedural principles to the contrary"). The Court proceeds to the merits of these claims.

**B.     Admission of Other Act Evidence**

Petitioner argues that the trial court improperly admitted testimony from two witnesses whose parents were formerly employed by Petitioner. Each witness testified that, during the time period when their parents were employed by Petitioner, Petitioner sexually assaulted them. Petitioner claims that the testimony was improperly admitted to establish his propensity to commit crimes. The Michigan Court of Appeals held that the testimony was properly admitted to show that Petitioner had a common scheme, system or plan to befriend his employees and then sexually assault their children. In addition, the court held that the charged and uncharged conduct were sufficiently similar to make the testimony relevant.

The United States Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53, 110 S. Ct. 668, 674-75 (1990). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

10

Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id.* at 513.  Petitioner's challenge to the admission of this evidence, therefore, does not warrant habeas relief.

### C.      Right to Present a Defense

In his second and fifth claims, Petitioner argues that he was denied his right to present a defense when the trial court precluded him from presenting evidence of bias and motive for fabrication and would not allow him to present testimony from employees who would testify that he did not molest their children.  Specifically, Petitioner sought to introduce evidence regarding Frank Liuzzo's financial interest in Petitioner's business and his purported desire to destroy that business.  Liuzzo is Kayla K.'s step-father and Jessica M.'s uncle.  Petitioner sought to show that Liuzzo had a motive to convince the children to fabricate allegations against Petitioner because this would somehow allow Liuzzo to keep equipment and checks that belonged to Petitioner's business.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law."  *Washington v. Texas,* 388 U.S. 14, 19 (1967).  It is one of the "minimum essentials of a fair trial."  *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  The Supreme Court has described the "most basic ingredients of due process of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense -- a right to his day in court -- are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."

11

*Washington*, 388 U.S. at 18 (1967) (*quoting In re Oliver*, 333 U.S. 257 (1948)).

Further, the Supreme Court described the right to present a defense as follows:

The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.* at 19.

This Court recognizes that, while the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id., citing Rock v. Arkansas*, 483 U.S. 44, 58 (1987). Because criminal defendants are guaranteed a "meaningful opportunity to present a complete defense," courts cannot exclude defense evidence under evidentiary rules that "serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes v. South Carolina*, 547 U.S. 319, 325-26 (2006).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the question is whether the defendant was afforded "'a meaningful

12

opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690

(1986), *quoting California v. Trombetta*, 467 U.S. 479, 485 (1984).  The prosecutor's

case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at

690-691 (1984), *quoting United States v. Cronic*, 466 U.S. 648, 656 (1984).  But, the

Supreme Court has emphasized that "the Due Process Clause does not permit the federal

courts to engage in a finely tuned review of the wisdom of state evidentiary rules."

*Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

In this case, the Michigan Court of Appeals held that the trial court correctly

excluded this evidence.  The Michigan Court of Appeals held that the inference Petitioner

was trying to establish, that Liuzzo had a motive to fabricate testimony because he would

gain financially by Petitioner's incarceration, was tenuous at best.  Petitioner's business

was defunct at the time of trial, and, the court held, much of the evidence Petitioner

argued was improperly excluded was, in fact, admitted at trial.  Therefore, the Michigan

Court of Appeals held that the trial court did not abuse its discretion or deny Petitioner his

right to a fair trial.

Petitioner was permitted limited exploration of the subject by the trial court and,

only when it became evident that the relevance was marginal at best, was the cross-

examination limited.  Thus, the record shows that the Michigan Court of Appeals'

decision that Petitioner was not denied his right to present a defense was not contrary to

or an unreasonable application of Supreme Court precedent.

Petitioner next argues that he was denied his right to present a defense when he

13

was precluded from presenting witnesses who would testify that they were employed by Petitioner and that their children were not molested by Petitioner. Petitioner argued that this testimony would rebut the prosecution's theory that he was a sexual predator who preyed upon the children of employees. The trial court, although denying the claim, provided no reasons for its denial. Where a state court decision lacks meaningful (or, for that matter, any) discussion, a habeas court must determine what theories or arguments supported or could have supported the decision. *Harrington*, 131 S. Ct. at 785. Then, the habeas court "must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are consistent with" clearly established Supreme Court precedent. *Id.*

Petitioner was not accused of preying upon all of his employees' children. Testimony that he did not prey upon certain employees' children would not make the allegations against him more or less believable. Thus, he was not denied his right to present a defense by the exclusion of these witnesses.

### D.   Ineffective Assistance of Trial Counsel

Petitioner argues that habeas relief should be granted because his constitutional right to the effective assistance of counsel was violated. Specifically, he argues that counsel was ineffective for: (1) failing to request a curative instruction after reference was made to a polygraph examination; (2) failing to highlight alleged inconsistencies between the testimony of Emily King and her mother; (3) failing to subpoena the physician who examined the victims; and (4) failing to investigate and present an offer of proof

14

regarding the Liuzzos' alleged theft from his plumbing business.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

First, in response to a prosecution question, the investigating officer testified that

15

he offered Petitioner a polygraph and Petitioner agreed to take one. The trial court sustained defense counsel's timely objection. Petitioner argues that, in addition to objecting, defense counsel should have requested a curative instruction. The Michigan Court of Appeals held that Petitioner failed to rebut the presumption that counsel's failure to object was a matter of trial strategy, reasoning that counsel likely did not wish to emphasize that Petitioner may have taken a polygraph and invite the jury to speculate about the results.

The Michigan Court of Appeals similarly concluded that defense counsel's handling of inconsistencies between Emily's and her mother's testimony was a matter of reasonable trial strategy. Emily testified that, prior to the incident prompting Petitioner's arrest, she told her mother Petitioner had inappropriately touched her during visits to her mother's office. She testified that her mother did not believe her. Emily's mother testified that, prior to the incident up north, she had no reason to believe Petitioner was behaving inappropriately. While there does seem to be some inconsistency between Emily's and her mother's testimony on this point, the testimony of both witnesses was, nevertheless, incriminating. It would have been reasonable for defense counsel to conclude that focusing on an inconsistency that did not bear upon the heart of the case against Petitioner would have distracted and alienated the jury.

The Michigan Court of Appeals held that counsel was not ineffective in failing to subpoena the emergency room physician. The registered nurse who testified about the physical examinations of the victims testified there was no physical evidence of trauma to

the victims.  Her testimony did not incriminate Petitioner and it was not unreasonable for the defense to conclude that her testimony about the absence of incriminating physical evidence was favorable to the defense and that it would be needless to probe further on this subject.

The Michigan Court of Appeals' opinion, although not citing *Strickland*, applied the test established therein to deny the foregoing ineffective assistance of counsel claims. Petitioner has not shown the Michigan Court of Appeals' application of *Strickland* to be unreasonable.

In his final ineffective assistance of counsel claim, Petitioner argues that his attorney should have more thoroughly investigated the Liuzzos' alleged motivation to frame Petitioner by investigating and making an offer of proof regarding alleged thefts from Petitioner's business. This claim was raised for the first time in Petitioner's motion for relief from judgment.  The trial court provided no reasons for its denial of this claim. Thus, as discussed above, this Court "must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are consistent with" clearly established Supreme Court precedent.  *Harrington,* 131 S. Ct. at 785.

The Michigan Court of Appeals, on direct review, held that evidence of the Liuzzos' alleged wrong-doing was irrelevant to the trial.  The evidence and affidavits presented by Petitioner in support of this claim fail to show any connection between the alleged theft and the allegations of sexual abuse.  This Court agrees with the state court's holding that this testimony was irrelevant to the charges of criminal sexual conduct.

17

Accordingly, it was not ineffective for counsel to fail to offer inadmissible evidence.

### E.       Sentencing Claim

Petitioner argues that his sentences were improperly based upon facts not admitted by him or determined by the jury.  In *Blakely v. Washington*, 543 U.S. 296, (2004), the Supreme Court held that, other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  *Id.* at 301, (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  *Blakely* involved a trial court's departure from Washington State's determinate sentencing structure.  In contrast, Michigan has an indeterminate sentencing system for most crimes, including those for which Petitioner is imprisoned.  The maximum term of imprisonment is set by law.  *People v. Drohan*, 475 Mich. 140, 160-61 (2006).  Indeterminate sentencing schemes do not violate the Sixth Amendment by invading the province of the jury, so long as the defendant is sentenced within the statutory maximum.  *Blakely*, 542 U.S. at 304–05, 308–09.

In this case, the sentencing court did not exceed the statutory maximum for Petitioner's crimes.  Therefore, the sentencing scheme did not run afoul of the Sixth Amendment.  Because *Blakely* does not apply to indeterminate sentencing schemes like the one utilized in Michigan, the trial court's sentence did not violate the petitioner's constitutional rights.  *Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *see also Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009).

18

F.      **Alleged Prosecutorial Misconduct**

Petitioner next argues that the prosecutor improperly vouched for the credibility of prosecution witness Jessica M. when he argued in closing statement: "Jessica has no reason not to tell the truth in this case," and "Jessica did not make this up."

It is well-established that prosecutors must "'refrain from improper methods calculated to produce a wrongful conviction.'" *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). However, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct may warrant habeas corpus relief only if the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett*, 117 F.3d at 964 (quoting *Serra v. Mich. Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

"'Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness.'" *U.S. v. Trujillo*, 376 F.3d 593,

19

607 (6th Cir. 2004), *quoting U.S. v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001). The

prosecutor argued that the totality of the evidence presented supported the prosecution's

version of the events and that Jessica had no motive to lie. The prosecutor did not place

the prestige of his office behind Jessica M. Instead, he simply invited the jury to consider

the victim's motives for testifying. This does not amount to improper vouching.

### G.    Sufficiency of the Evidence

Next, Petitioner argues that insufficient evidence was presented to support his

conviction for second-degree criminal sexual conduct with victim Kayla K.

"[T]he Due Process Clause protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review

of a sufficiency of the evidence challenge must focus on whether "after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.

Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he

*Jackson* standard must be applied 'with explicit reference to the substantive elements of

the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th

Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary

sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v.

Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether,

viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (citing *Jackson,* 443 U.S. at 319).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of second-degree criminal sexual conduct, as relevant to this case, are (1) sexual contact (2) with a person under thirteen years of age. *See* Mich. Comp. Laws § 750.520c(1) (a).  "'Sexual contact' includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . ."  Mich. Comp. Laws § 750.520a(q).  The phrase "intimate parts" "includes the primary genital area, groin, inner thigh, buttock, or breast of a human being."  Mich. Comp. Laws § 750.520a(e).

Because the trial court denied the claim, but provided no explanation for its decision, the Court must determine what theories or arguments supported or could have supported the decision.  *Harrington*, 131 S. Ct. at 785.  Jacob, Kayla's brother, testified, one night when they slept at Petitioner's home, he saw Petitioner come into the room where he and his sister were sleeping and touch his sister.  On direct examination, Jacob

21

testified that he saw Petitioner stick his hand down Kayla's pants. On cross-examination, he testified that Kayla was under the bedcovers, so he did not actually see Petitioner put his hand down Kayla's pants. He only saw Petitioner put his hand under the covers. Kayla testified, but was unable to remember any of the events.

"A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, __ U.S. __, 130 S. Ct. 665, 674 (2010), (quoting *Jackson*, 443 U.S. at 326).

Jacob's testimony, if believed, coupled with Petitioner's overall behavior, while not overwhelming, is sufficient to establish satisfy each of the required elements. Thus, the state Court's conclusion was not contrary to or an unreasonable application of *Jackson*.

## H.    Extrinsic Influences on Jury

Next, Petitioner argues that jurors were exposed to extrinsic influences when they witnessed the prosecutor berating defendant at a restaurant during a lunch recess and when they saw Petitioner wearing manacles.

"As a matter of law, clearly established Supreme Court precedent requires that a

criminal defendant be afforded the right to confront the evidence and the witnesses

against him, and the right to a jury that considers only the evidence presented at trial."

*Doan v. Brigano*, 237 F.3d 722, 733 n.7 (6th Cir. 2001) (citations omitted), *overruled on*

*other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003).  "Thus, under clearly

established federal law, jury exposure to extrinsic evidence or other extraneous influence

violates a defendant's Sixth Amendment rights, . . . and a state court decision that

conflicts with this rule may justify habeas relief under the standard set forth in the

AEDPA."  *Fletcher v. McKee*, No. 08-1240, 2009 WL 4755293, *3 (6th Cir. Dec. 11,

2009).

        An extraneous influence on a juror is "'one derived from specific knowledge about

or a relationship with either the parties or their witnesses.'" *Garcia v. Andrews*, 488 F.3d

370, 376 (6th Cir. 2007) (*quoting United States v. Herndon*, 156 F.3d 629, 635 (6th Cir.

1998)).  Examples of extraneous influence include "'prior business dealings with the

defendant, applying to work for the local district attorney, conducting an out of court

experiment, and discussing the trial with an employee.'" *Id.* (*quoting United States v.*

*Owens*, 426 F.3d 800, 805 (6th Cir. 2005)).  Examples of "internal" influences include

"the behavior of jurors during deliberations, the jurors' ability to hear and comprehend

trial testimony, and the physical and mental incompetence of a juror."  *Williams v.*

*Bagley*, 380 F.3d 932, 945 n.7 (6th Cir. 2004).

        Petitioner claims two instances of extrinsic influence on jurors which are

summarized in his affidavit as follows:

5.  During my trial there was a lunch break and I went to lunch in town at a restaurant where the prosecutor and several jurors from my trial were also present.

6.  In a voice loud enough to be heard by the jurors, the prosecutor announced that I was not allowed to remain at liberty and that I needed to be locked up.

7.  The jury later saw me in handcuffs being led towards the courtroom.

Petitioner's Affidavit, 7/31/2007, at 2.

Other than his own affidavit, Petitioner provides no support for his characterization of the alleged encounter with the prosecutor at the diner.  The trial transcript evidences no objections or discussion regarding any questionable behavior by the prosecutor at the diner or the jury viewing Petitioner in handcuffs outside the courtroom.  Petitioner's self-serving affidavit, absent any other evidence, is simply inadequate to show that the jury was exposed to any external influences.  Moreover, assuming that the jury viewed Petitioner in handcuffs in the hallway, Petitioner has not shown that this incidental viewing of a routine security measure resulted in any prejudice.

## I.      Alleged Ineffective Assistance of Appellate Counsel

Finally, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default.  As discussed above, the Court determined that Petitioner's claims were not defaulted.  Nevertheless, the Court will briefly address Petitioner's ineffective assistance of appellate counsel claim.

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims Petitioner raised on collateral review and in his habeas petition.

24

Petitioner has failed to show that any of these claims were potentially meritorious. Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise them on direct appeal.

## V.      Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## VI.     Conclusion

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

25

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATE: June 12, 2012

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner via ordinary U.S. Mail and Counsel for the Respondent, electronically.

s/Bernadette M. Thebolt
Case Manager

26